IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA STAHLEY, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 07-1873 |
| | : | |
| GUARDIAN LIFE INSURANCE | : | |
| COMPANY OF AMERICA, | : | |
| Defendant | : | |

M E M O R A N D U M

STENGEL, J.                                                July 23, 2008

Donna Stahley, a white female born December 16, 1963, brought this civil rights action against her former employer, Guardian Life Insurance Company of America ("Guardian"), for alleged violations of the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964, and the Pennsylvania Human Relations Act ("PHRA"), resulting from her termination from employment on March 28, 2006.[1]  Defendant has moved for summary judgment.  For the following reasons, I will grant the defendant's motion in its entirety.

I.    BACKGROUND[2]

Ms. Stahley was first employed by Guardian in April 1982.  In November 2005,

---

[1]Ms. Stahley has withdrawn Count II, alleging a disparate impact theory of liability in her age discrimination claim.  (See Opp'n Br. 9.)  The remaining claims are therefore her disparate treatment claim under the ADEA (Count I), her Title VII racial and sex discrimination claims (Counts III and V), and her parallel claims of age and sex discrimination under Pennsylvania's Human Relations Act (Count IV).

[2]I have viewed the facts in the light most favorable to the plaintiff, as the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

she held the position of Director of Maintenance Billing Development within the Operations function of Guardian's Group Insurance Profit Center, an officer position within Guardian. Esme Holligan, an African-American female, acted as Ms. Stahley's direct supervisor. Ms. Holligan also held an officer position. She is older than Ms. Stahley. Ms. Holligan reported to Thomas Martorana, a white male who is also older than Ms. Stahley and who also held an officer position at Guardian. Mr. Martorana reported to Richard White, who was then Senior Vice President, Group Insurance.

At all relevant times, Guardian maintained specific policies governing the retention of outside vendors and assigning varying levels of management with respect to their cost. Mr. Martorana developed additional vendor retention and related policies specific to the Group Insurance Operations function, contained in a document entitled "Delegation of Authority" (the "Delegations"). This policy was in place during the time period relevant to Ms. Stahley's complaint, and set out restrictions on the authority of Mr. Martorana and those who reported to him on a number of areas, including outside vendor retention. Once Mr. White approved the Delegations, they could not be altered without his consent, particularly the provisions limiting Mr. Martorana's authority. One provision of the Delegations required the presentation of a "business case" and the approval of the Group Chief Financial Officer for any outside vendor contract with a value of $100,000 or more. Ms. Stahley was familiar with the Delegations in general, and the requirements pertaining to vendor contracts in excess of $100,000 in particular.

2

In November 2005, Mr. Martorana assigned to Ms. Holligan the task of securing a contract with a firm named Seabrook to develop and document various operational procedures.  Mr. Martorana and Ms. Holligan had discussed the prospect for some time, and Mr. Martorana now wanted the Seabrook Contract in place immediately so that it could be paid for with money left in the 2005 budget.  Mr. Martorana instructed Ms. Holligan to break the Seabrook Contract into three phases, each worth less that $100,000, in order to avoid the business case and approval requirements of the Delegations.  Ms. Holligan knew at the time that this was inconsistent with the Delegations.  Ms. Holligan emailed plaintiff and Gerald Picone, an employee in the Quality Assurance function who would process the contract.  Ms. Holligan instructed Stahley and Picone: "we need to move fast so I can get a bill in this month for payment.  Also, [Mr. Martorana] wants us to now break the contract in [three] phases, with each phase coming in at $95,000 so it brings us below the business case threshold."  (Stahley Dep. Tr. 28-31, Guardian Br. Ex. E.)  Plaintiff admits to knowing that the instructions were inconsistent with the Delegations.  (Id. at 30-31, 34-35, 51-52.)  Ms. Stahley did not object to this procedure because, she asserts, she believed that Mr. Martorana had the authority to make this decision.  (See id. at 37.)

Mr. Picone, on the other hand, went to his immediate superior in the Quality Assurance function, Michael Chiaffitella, and reported the proposed piecemeal Seabrook Contract.  Mr. Picone also instructed Ms. Stahley, orally and in writing, that the Seabrook

Contract required approval of the Group CFO.  In her deposition, Ms. Stahley admitted to receiving an email from Mr. Picone reiterating that contracts over $100,000 required special approval procedures, but she stated that Ms. Holligan's prior assurance that this case was an exception led her to believe no further inquiry was warranted.  (See Stahley Dep. 35:7-14.)  Mr. Chiaffitella went to Mr. Martorana to raise the issue of the Seabrook Contract, but did not take further action.  Ultimately, the Seabrook Contract was concluded without the business case or approval from the Group CFO.

In late 2005, a routine internal audit indicated that some managers may have pre-paid vendors with money remaining in their budgets from the previous year.  This was not Guardian policy, and the audit suggested, at least, that a number of managers misunderstood Guardian policy with respect to vendor contracts.  The auditors contacted Mr. Picone, who immediately informed them about the division of the Seabrook Contract to avoid the requirements of the Delegations.

The Guardian Law Department began an investigation into the Seabrook Contract. During the investigation, Ms. Stahley claimed that she did not recall receiving Mr. Picone's email concerning the Seabrook Contract.  Based on preliminary results of the investigation, Mr. White suspended Mr. Martorana, Ms. Holligan and Ms. Stahley for their role in orchestrating the contract, as well as Mr. Chiaffitella, for failing to pursue the issue further after informing Mr. Martorana of Mr. Picone's report.  After reviewing the findings of the investigation, Mr. White decided to terminate Mr. Martorana, Ms.

Holligan and Ms. Stahley.

Mr. White determined not to fire Mr. Chiaffitella.  Instead, Mr. White removed Mr. Chiaffitella from his Quality Assurance position and altered the internal supervision of Quality Assurance, requiring that function to report to the Group CFO, rather than to Operations.  Mr. White intended the action against Mr. Chiaffitella as a disciplinary demotion.  Ms. Stahley also avers in her deposition that at least one other male employee, whose job had been eliminated by Guardian, was given an opportunity to join the Customer Experience Project in a position created for him.  (See Stahley Dep. 69.)  Mr. Chiaffitella had 13 more years of experience than Ms. Stahley, having worked for Guardian for over 30 years.  He is the only individual advanced by Ms. Stahley as a similarly-situated, male employee treated differently from herself.  With regard to her gender discrimination claim, plaintiff admits that Mr. White never made comments suggesting bias against female employees to her directly.  Plaintiff presents evidence, in the form of Ms. Holligan's deposition, that a "boys club" existed at Guardian, meaning that a group of men were "protected" by each other within the company.  (See Holligan Dep., Opp'n Br. Ex. B, 23:6-24: 7, 32:9-25.)

Ms. Stahley did not file a timely administrative charge of racial discrimination based on the incidents described.  In support of her racial discrimination claim, Ms. Stahley offers her own testimony concerning statements made to her by a former Guardian employee, Kathy D'Archangelo, a Human Relations officer who witnessed a

conversation among Guardian managers and an in-house Guardian lawyer.  According to plaintiff, D'Archangelo told her that she had overheard references to plaintiff's termination as necessary to prevent a racial discrimination claim by Ms. Holligan.  (See Stahley Dep. 65-67.)[3]

Stahley also acknowledges that Mr. White did not know she was over the age of 40 when he decided to terminate her.  Plaintiff asserts that two "younger individuals assumed her responsibilities," Robert Fahey, and Ruth Herman.  (See Opp'n Br. 3.)  However, she does not indicate their ages, and in her deposition she states that Mr. Fahey was not, in her understanding, promoted to replace her.  (See Stahley Dep. 21:16-17.)  Plaintiff admits that Mr. White never made comments suggesting bias against older employees to her directly.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v.

_____

[3]I note that Ms. D'Archangelo's statements are double, if not triple, hearsay, and would not be admissible at trial.  I will therefore decline to consider this evidence as part of Ms. Stahley's claim.  See Philbin v. Trans Union Corp., 101 F.3d 957, 961 (3d Cir. 1996) ("[a] hearsay statement … is not capable of being admissible at trial, and could not be considered on a motion for summary judgment") (internal citations and quotation marks omitted).

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. at 322.  Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.  The court must decide not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  Id. at 252.  If the non-moving party has exceeded the mere scintilla of evidence threshold and has offered a genuine issue of

material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. <u>Big Apple BMW, Inc. v. BMW of North America, Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

**III.   DISCUSSION**

A.     <u>Count V: Title VII and PHRA Claims of Race Discrimination</u>

Plaintiff does not dispute that she failed to file a timely administrative charge of race discrimination. (<u>See</u> Guardian Br. Ex. G, hereinafter "Charge Letter.")  She is required, under both Title VII and the PHRA, to exhaust administrative remedies, and failure to do so is a bar to her claims. <u>See</u> <u>Wilson v. Philadelphia Housing Auth.</u>, 06-4932, 2008 U.S. Dist. Lexis 19636, at *11 (E.D. Pa. Mar. 12, 2008) (citing <u>Watson v. Eastman Kodak Co.</u>, 265 F.3d 851, 854 (3d Cir. 2000) (Title VII) and <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 925 (3d Cir. 1997) (PHRA)).  "Only claims that are fairly within the scope of the prior administrative complaint, or the investigation arising therefrom can be considered to have been exhausted." <u>See</u> <u>id.</u> (citing <u>Antol v. Perry</u>, 82 F.3d 1291, 1295) (internal quotation omitted).

In <u>Wilson</u>, the plaintiff's only reference to race discrimination appeared in the "checked boxes on her charge information questionnaire." <u>See</u> <u>id.</u> at *12.  This was insufficient to bring her Title VII and PHRA claims "fairly within" the scope of her administrative complaint. <u>Id.</u> (citing authority establishing that boxes checked off on an

intake form cannot properly exhaust a claim that is absent from a subsequent formal administrative charge).  In this case, the box marked "race" under the heading "Cause of Discrimination Based On (check appropriate box(es))" is left blank on the Charge Letter, while both "age" and "gender" are checked off, providing even less evidence of exhaustion than that which was deemed insufficient in Wilson.  Id.; (Charge Letter 190.) The narrative section of the Charge Letter makes no reference to race, and clearly states "Complainant would hereby like to file a charge in violation of the Age Discrimination in Employment Act and a charge of gender discrimination under Title VII."  (Charge Letter 191.)  I will accordingly grant summary judgment on this count on the ground that plaintiff has failed to exhaust her administrative remedies.

B.      Age and Gender Discrimination

        Ms. Stahley brings both her age and gender discrimination claims based on circumstantial or indirect evidence of discrimination, and so she must satisfy the burden-shifting method of proof established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See also Storey v. Burns Int'l Security Svcs., 390 F.3d 760, 763-64 (3d Cir. 2004) (analysis applicable to Title VII); Simpson v. Kay Jewelers, 142 F.3d 639, 643 (3d Cir. 1998) (ADEA); Fairfield Twp. Volunteer Fire Co. No. 1 v. Penn. Human Relations Comm'n, 609 A.2d 804, 805 (Pa. 1992) (PHRA).  A prima facie case of employment discrimination consists of four basic elements: (a) plaintiff's membership in a protected class; (b) that plaintiff held a position for which she was minimally qualified; (c) that she

suffered an adverse employment action and (d) evidence of some other fact which, if left unexplained, would permit an inference of unlawful discrimination. <u>Sempier v. Johnson & Higgins</u>, 45 F.3d 724, 728 (3d Cir.), <u>cert. denied</u>, 515 U.S. 1159 (1995). Plaintiff has the burden under this framework of proving her prima facie case by a preponderance of the evidence. <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981).

If Ms. Stahley succeeds in making out a prima facie case of age or gender discrimination, the burden of *production* shifts to Guardian to articulate a legitimate, non-discriminatory reason for her termination. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993). The burden of proving intentional discrimination remains at all times on plaintiff. <u>Id.</u> 506-07. Without conceding that plaintiff has established a prima facie case as to either the age or the gender discrimination claims,[4] defendant argues that it has carried its burden by articulating a non-discriminatory reason for Ms. Stahley's termination, and that she cannot refute this explanation to save her claims. <u>See Embrico v. U.S. Steel Corp.</u>, 404 F. Supp. 2d 802, 823-27 (E.D. Pa. 2005) (plaintiff must come forward with evidence to show defendant's explanation to be a pretext for unlawful

---

[4]Indeed plaintiff's prima facie claims of gender and age discrimination, particularly at the summary judgment stage, are plagued with unexplained insufficiencies, including her failure to proffer evidence of the ages of her alleged replacement employees, as well as the fact that Mr. Chiaffitella seemingly is not a "similarly situated" comparator for gender discrimination purposes, since he was more experienced by over 10 years. <u>See</u> Keller v. Orix Credit Alliance, 130 F.3d 1101, 1108 (3d Cir. 1997) (requiring as part of plaintiff's prima facie case a showing that plaintiff "was replaced by a *sufficiently* younger person to created an inference of age discrimination") (emphasis added); <u>Tucker v. Merck & Co.</u>, 2004 WL 1368823, at *3 (E.D. Pa. Jun. 17, 2004), <u>aff'd</u>, 131 Fed. Appx. 852 (3d Cir. 2005) (stating that plaintiff must show "all relevant aspects of employment" are "nearly identical to" the alleged comparator).

discrimination).

I agree that on the facts presented Ms. Stahley fails to refute defendant's non-discriminatory reasons for her termination, and that summary judgment must be entered against her on her age and gender discrimination claims as well.  Plaintiff's burden is more substantial than simply voicing her disagreement with Mr. White's decision to terminate her, or even disputing the fairness of his actions generally.  See, e.g., Keller, 130 F.3d at 1109 ("The question is not whether the employer made the best, or even a sound, business decision, it is whether the reason is [unlawful discrimination]"); Fuentes v. Perksie, 32 F.3d 759, 764-65 (3d Cir. 1994).  She must, at a minimum, undermine the credibility of Mr. White's explanation for the employment actions taken in response to the Seabrook Contract investigation as gender- and age-neutral.  She has not done so.

With respect to her age discrimination claims, Ms. Stahley admits that Mr. White did not know she was over 40 at the time of her termination.  She also admits that what she did was a violation of Guardian policy.  Her allegation amounts to an understandable disagreement over how Mr. White handled the disciplinary action taken in response to the collective violation of the Delegations.  (See Stahley Dep. 52.)  However, plaintiff must do more than disagree to succeed on her claim; she must prove intentional discrimination on the basis of her age.  Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 283 (3d Cir. 2001).  The present record is insufficient to advance her claim beyond summary judgment.

Plaintiff's gender discrimination claims equally fail for want of proof that Mr. White's explanation of his decision was a pretext for unlawful discrimination on this basis. Mr. White signaled at least four gender-neutral reasons for retaining Mr. Chiaffitella:[5] (a) lack of direct, affirmative involvement in manipulating the contract, (b) the fact that he at least told Mr. Martorana that what he was doing was improper, (c) his length of service and (d) his cooperation in the investigation. Again, plaintiff has come forward with insufficient evidence to rebut defendant's non-discriminatory justification for the adverse employment action. See Keller, 130 F.3d at 1109.[6]  Summary judgment is therefore properly entered against her on her gender discrimination claim.

## IV.   CONCLUSION

Based on the foregoing, I will grant defendant's motion as to all counts of plaintiff's complaint. An appropriate Order follows.

---

[5]Ms. Stahley has clearly indicated that her gender discrimination claim is limited solely to the treatment of Mr. Chiaffitella. (See Stahley Dep. 43.)

[6]Ms. Holligan's statement that she had heard the term "boys club" used at Guardian cannot save plaintiff's gender discrimination claim. Plaintiff cannot show that Mr. White was in any way associated with this reference, nor could Ms. Holligan say with any degree of certainty to whom the term did refer within the company. (See Holligan Dep. 32.)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DONNA STAHLEY,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 07-1873** |
| | : | |
| **GUARDIAN LIFE INSURANCE** | : | |
| **COMPANY OF AMERICA,** | : | |
| **Defendant** | : | |

## <u>O R D E R</u>

**STENGEL, J.**

     **AND NOW**, this 23rd day of July, 2008, upon consideration of the Motion for

Summary Judgment filed by defendant Guardian Life Insurance Company of America,

(Document #11), it is hereby **ORDERED** that the motion is **GRANTED** in its entirety.

BY THE COURT:

  /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONNA STAHLEY,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 07-1873** |
| | : | |
| **GUARDIAN LIFE INSURANCE** | : | |
| **COMPANY OF AMERICA,** | : | |
| **Defendant** | : | |

**O R D E R   O F   J U D G M E N T**

**STENGEL, J.**

      **AND NOW**, this 23rd day of July, 2008, in accordance with my Order granting

defendant's Motion for Summary Judgment, and in accordance with Federal Rule of Civil

Procedure 58, judgment is hereby entered on behalf of the defendant, Guardian Life

Insurance Company of America, and against the plaintiff.


                                        BY THE COURT:


                                         /s/ Lawrence F. Stengel
                                        LAWRENCE F. STENGEL, J.